The next case of the day, which is United States v. Brandon Shoffner, No. 18-3448. And we'll hear from Mr. Melisa. Thank you, Your Honor. Good morning. In United States v. Gall, the Supreme Court explained that an adequate explanation from the district court for a sentence allows for meaningful appellate review of the reasonableness of a sentence and also, importantly, promotes the perception of fair sentencing. In Mr. Shoffner's case, there was virtually no explanation for the sentence of 84 months that the district court imposed. At the end of the sentencing hearing, Mr. Shoffner addressed the district court directly, much to my chagrin as his attorney in the trial court, and said, Your Honor, may I say something? The district court said, You may. He struggled to get words out and basically said, Why? And it's a joke. Now, his words may have been improvident, particularly the last comment, but his exchange with the district court really crystallized the argument that is here on appeal today. After having given no explanation other than a rote recitation of the sources he had considered and the statutory language, the district court nearly repeated, Looking at the nature and circumstances of the offense, the history and characteristics of you, I think that an 84-month sentence is appropriate. This rote recitation would apply to literally every defendant before a district court, but it would explain nobody's particular sentence. As this court pointed out in Lyons and several cases with a remarkably consistent strain of law, the sentence should explain, or the district court should explain why a particular sentence for a particular defendant. So if one references the nature and circumstances of the offense, it's important to say what nature, or what circumstances of the offense. The history and characteristics of the defendant, it's important to specify what history and what characteristics. Importantly in this case, the district court had actually noted during the sentencing hearing that due to a change in judge, there was actually very little familiarity with the nature and circumstances of the offense. There was another reference to a previous judge's sentence that said perhaps Judge Bruce got it right, but that reference then proceeded to essentially reject the reasoning from that previous sentence. The importance of explaining why the district court winds up at a particular point is even more important when the sentence is near the top end of the guidelines. In Mr. Schaffner's case, his guidelines were 70 through 87 months. This sentence of 84 months is clearly above that low end, and Mr. Schaffner has no understanding of why. Our principal argument in mitigation was that since the time of his 2017 original sentencing, he had engaged in a good deal of not just good behavior while in the BOP, he had also taken over 20 courses for self-improvement to deal with some of the very specific things that Judge Bruce had referenced at that first sentencing. The district court did not explain any factoring of whether that mattered to him or whether that did not matter to him. Perhaps the only explanation we saw was, you're not entitled to the same variance. He didn't say, I think these courses were important for my sentence, or I'm sorry your courses do not warrant even one day fewer on your sentence. So essentially, we are at the point where we have no idea why the district court imposed that particular sentence other than the fact that he reviewed sentencing commentaries, arguments, and then certain statutory factors. Mr. Malisa, I'll just say one of the things that was a challenge for me as a district judge was trying to explain sentences under 3553A when you have Congress adopting purposes of sentencing that are essentially all of the above when it comes to sentencing philosophy. We want to deter, we want just deserts, we want to rehabilitate, we want to reflect seriousness of the offense, we want to protect the public, we want everything. And often those instructions or values point in opposite directions in a case. So I guess I'm wondering aloud how subject such decisions are to reasoned explanation. Yes, Your Honor. This court's been very clear that a district court does not have to say much, but there has to be something. And you're supposed to, as a judge, as I understand the cases, judges are supposed to explain everything that's not obvious to people who are familiar with the case. If it is obvious, one need not belabor that. But in this case, it is not obvious why good behavior over about 18 months and very concerted efforts at self-improvement did not warrant a half an hour less in jail or a day less in jail. Perhaps you could also address one of the concerns the government raised. The kind of remand that occurred here because of, in essence, one of these almost innumerable debates about the categorical treatment of particular prior crimes doesn't actually change any facts when you go back before the district court. And the government has argued that the defendant, in essence, got a windfall when it came to the guidelines and shouldn't necessarily expect a lighter sentence here. Yes, Your Honor. I'll probably get into my rebuttal if you don't mind. It's flexible. Thank you. Well, with regard to calling it a windfall at the district court, I said windfall for one person is just the constitutional interpretation of the courts for another way. And while the facts did not change in the transcript of the sentencing hearing, the district court at the 2018 hearing said, I'm not particularly familiar with those facts. So it doesn't appear, at least on the face of those words, that the district court was relying on those facts as they were stated at the first hearing or the second hearing. Further, Judge Bruce had specifically discussed and went into a 90-page transcript discussing how the guidelines played in to his original 84-month sentence. And he basically said, very much shortening it, I'm starting at your base level, which incorporates the two prior crimes of violence, and I'm adding about half of the 3 1⁄2 years you got for the striking a law enforcement officer enhancement. So just based on that, okay, no facts have changed. If the district court in 2018 had been applying the same reasoning, one would have expected that that reduction of two or four-level reduction would have made a difference. So whether the facts changed or not, it didn't appear that the same analysis had been applied to it. And I'd save the rest for rebuttal. Okay. Thank you very much. For the government, Ms. Ritzer. Thank you, Your Honor. Good morning, Your Honors. May it please the court. My name is Rachel Ritzer on behalf of the United States. In imposing sentence in this case, the district court committed no error. The court both appropriately considered the defendant's arguments in mitigation as well as sufficiently explained the reasoning for its within-guideline sentence that was imposed in this case. Briefly, I would like to start responding to defense counsel's heavy reliance on the initial sentencing judge's reasoning and his comments at sentencing. As this court well knows, this was a plenary resentencing. The district court was under no obligation to review or rely on the reasoning of the initial sentencing court in imposing its own sentence. In a resentencing, a court begins with a clean slate, and that's exactly what this court was authorized to do and chose to do. It in fact noted that the variance downward that the initial sentencing court granted on that striking, the so-called striking enhancement under the guidelines, was not due or owed to the defendant in the second resentencing. The defendant claims in his brief that two key arguments in mitigation were not addressed or insufficiently weighed by the district court in imposing sentence. First, the so-called striking enhancement under the guidelines, and second, the post-conviction rehabilitation. As to the striking enhancement, the court was simply not required to address that at all at sentencing. This was a categorical or blanket objection to the guidelines as they apply. The defendant simply felt that the striking enhancement was unfair, it was too severe. He had no contentions that it somehow did not or should not apply to him. In fact, there was no objection to the striking enhancement being listed and described in the PSR. Because it was this blanket objection, the district court had no obligation to address it as this court has held multiple times. Additionally, it was simply not a principle argument in mitigation by the defendant. It was minimally referenced in the sentencing commentary filed by the defendant prior to the sentencing hearing, minimally referenced by the defendant's counsel during arguments, and the defendant himself in his allocution failed to even raise the strike to the officer, which was in fact noted by the district court when the court encouraged the defendant to reflect on the strike to the officer and how to avoid acting similarly in the future. Nevertheless, the district court, as described, did discuss the strike in sentencing, which indicated that it was in fact on the court's mind in imposing sentence, both referencing to the defendant encouraging to reflect on it, as well as noting that the variance was not required to be imposed in a second sentencing. As to the other primary argument in mitigation, the post-conviction rehabilitation of the defendant, frankly, the district court did clearly consider this. It simply rejected that argument. The district court noted the completed courses that the defendant had taken, but stated rather clearly in the transcript that the courses did not change the court's mind as to what the appropriate sentence was. The court expressed concern about the defendant's risk of recidivism, particularly encouraging him to continue taking the courses or he would appear back before that court or a different court in the future. He even questioned the defendant's . . . How did he really rely on recidivism? On what part of the transcript are you relying on? Your Honor, there were two parts in the sentencing that the district court encouraged the defendant that despite any disappointment he may have in the 84-month sentence, encouraged him to that the defendant would appear back before that court or a different court in the future. That's the only remark the government can rely on for the proposition that the judge gave a little sentence he gave because he was concerned about recidivism? Your Honor, I apologize if I misspoke. That is not the sole reason that the court relied on. As Judge Hamilton noted, 3553A requires a number of factors be considered by a district court. The government's position is that the recidivism risk of this particular defendant was just one of a number of factors that the court relied on. However, the court's statements to the defendant do, the government believes, make it clear that the court did not quite buy this argument that the defendant had somehow rehabilitated himself during his time in custody. Yeah, he did think that the in-house courses were, he thought the in-house courses had to continue and they had to continue, so he continued to make progress, but it's a rather a stretch to say that Judge gave a, that he was worried about recidivism from that comment. I mean, that's really putting words in Judge Shadid's mouth. I understand, Your Honor. I think that the, the comments in which the court made reference to reappearances in court are suggestive that there would be a reason or bad behavior, criminal action by the defendant in the future. But again, the court did not solely rely on that. The court did note multiple times that, that there, I'm sorry. Please. Certainly, Your Honor, that, that there were other reasons for its, its sentence. But particularly in, within guidelines, sentences, typical sentences, in-depth analysis is simply not required of a district court. This sent, this guideline range, as defendant's counsel noted, was machined. It has to be enough so we can review the record there, right? Certainly, Your Honor, and I, and the government believes that there was sufficient here. The court. How are we going to look the, how are we going to look our colleagues, our judicial colleagues in the face if we accept that argument and say Lyons and Walker are still good law? I believe that this is quite distinguishable from Lyons, Your Honor. In Lyons, this court noted that there was absolutely no reasoning that was provided, whereas this district court had a back-and-forth with the defendant during sentencing, and the court in Lyons even, frankly, failed to even say the, the phrasing correctly that it was greater, that it was not greater than necessary. This court. So you could, you could, we can all make distinctions on fact, but those cases stand for the proposition that you, you're going to take a factor into consideration, you have to give a sufficient reason, elaboration, so that the court of appeals knows why you did it, okay? And so, we say that we judge, we judge, we think Judge Steed relied on recidivism because he told the guy to take in, in-house prison courses, and it encouraged him to continue, but by the way, our colleagues, district judges, Lyons and Walker are still good law. If you're a, did, hard-working district judge, do you know which ends up as far as what the court of appeals is doing? I believe so, Your Honor. Uh, the, the court, as I, as I noted, um, explained that, uh, the, it's, it's reasoning in relying on the guidelines and imposing sentence, that, that variance from the strike and enhancement was not necessary, um, it did, uh, as noted, note the risk to recidivism, not just that the defendant should continue, um, to, to take the courses, but warned him as to why he should encourage him to reflect further on the strike to the officer and his actions, um, in order to avoid that in the future. And frankly, the defendant himself demonstrated that that fear of recidivism, of, um, the courses frankly not working, were to be valid when he had the outburst, the angry outburst in court, um, calling the, the court or the situation or the sentence a joke, um, and, and expressing angrily, um, that the, the, uh, that it, that the defendant did not agree with the sentence and felt somehow that it was owed or do that same variance that was granted by the initial sentencing court. Judge Shadeed, do you have anything to say about the defendant's remarks? Um, Your Honor, he, he acknowledged the defendant's frustration, but again, noted and encouraged the defendant that if he, he expressed his frustration in the sentence, um, by refusing to continue to better himself, that, that he would appear back before a different, a different court saying the same things with, with little to no effect. Pretty much what we'd expect of an experienced district judge with a frustrated defendant, right? Certainly, Your Honor, certainly. Um, again, as noted, the, the district court, um, did sufficiently explain the within guideline sentence that was imposed here, um, therefore the United States is respectfully requesting that this court affirm the judgment and sentence of the district court. There are no further questions. Thank you, Your Honor. Thank you very much. Um, Ms. Ritzer, Ron Rebuttal, uh, Mr. Melisa. Thank you, Your Honor. Um, the government's, uh, argument dealt a good deal with the, um, fact that Judge Shadeed, um, uh, had this back and forth with Mr. Schaffner at the conclusion of the hearing. Um, respectfully, I would say it's difficult to characterize it as an angry outburst. Um, Mr. Schaffner said, Your Honor, may I say something? The judge gave him leave to speak. At the conclusion of what he said, he was frustrated, he wasn't articulate, but he didn't yell. Um, he didn't gesticulate and at the conclusion, Judge Shadeed said, your sentence is 84 months and Mr. Schaffner said, thank you, Your Honor. It was not an outburst. It was frustrated, but it was not an outburst. Um, importantly, and this is when Judge Shadeed, or the district court, referred to, um, the need to continue taking classes, to avoid recidivism. This was after he had already imposed the sentence. He had already said it was 84 months. Uh, he said, did you take the classes for a lower sentence or to improve yourself? And Mr. Schaffner said, to improve myself. He said, well, keep doing that so you don't get back in front of me. Um, I take slight issue with the government's, uh, characterization of our argument, um, in relying heavily on the original sentencing. Um, we rely heavily on lions, uh, on the cases that say that there needs to be an explanation. Um, that we do not understand, based on the transcript or the exchanges in the hearing, why the sentence was imposed as it was. Um, uh, with reference to the enhancement, um, there was no contention. There was no, uh, argument about that. Um, Mr. Schaffner accepted responsibility, and, uh, we made our argument at the time on 3553A, and, um, we're hoping for an explanation under those reasons. Unless the court has any questions, I have nothing further. Okay, thank you very much. Thank you. Our thanks to both counsel. The case is taken under advisement. We'll move to the...